# SUPREME COURT.

## STERLING SMITH agt. J. F. SCRIBNER.

Where a *married woman* contracts a debt, founded upon her separate property, with the approbation and consent of her husband, the creditor has a right, at his election, of suing both, or either one of them—both, if he wishes to reach the wife's property; and the husband alone, if it is desired to bind him personally.

*New-York Special Term, April,* 1856.

THIS is an action against a husband, for the alleged debt of his wife, arising out of a sale of goods which were delivered at a hardware store kept by the wife in Elmira.

J. Brice Smith, *for plaintiff.*
S. G. Hathaway, *for defendant.*

Roosevelt, Justice.   The wife, it appears, had a separate
estate, both real and personal, of her own, amounting to $50,000.
In 1851, with the approbation of her husband, she bought out
the stock of a firm in Elmira, and set up, and has ever since
continued, the business of a hardware merchant in her own
name, her husband, by her appointment, acting as her agent in
making purchases as well as sales.

The goods in question were sold in 1854, after Mrs. S. had
been carrying on business in the manner described for about
three years.   They were charged by the plaintiff, in his books,
to " J. F. Scribner, agent;" although the purchase was in fact
made by one Cole, a clerk in the store of Mrs. S., and as her
agent, he taking the goods to the store, where they were re-
ceived as part of the stock in trade to be disposed of in the
usual course of business.

Does such a purchase bind the husband ?   Or is the remedy
against—and exclusively against—the wife ?

The general rule undoubtedly is, that where a wife, although
in her own name, makes an executory contract, with the con-
sent of her husband, the transaction binds him, and not his wife.
Equity, however, makes an exception in the case of married
women, who have separate property—treating them, to the ex-
tent of such property, as single women.   (*Jaques* agt. *The Meth-
odist Church*, 17 *Johns. Rep.* 548.)   The statutes of 1848 and
1849 confirm, and in some degree extend, the exception, mak-
ing all the property of married women, whether real or per-
sonal, and whether settled on them or not, their sole and sepa-
rate estate, "as if they were single females."

One of the essential attributes of property, as recently held
by the court of appeals in the so-called liquor cases, whether
such property be the property of single males or single females,
is the right of sale and exchange.   And is not a purchase made
by a wife, in respect of her separate estate, a mere contract in
effect to exchange so much of that estate for the goods pur-

Smith agt. Scribner

chased? And if so, is it not a contract, which, under both the statute and the equity rule, she has the power to make? The contract may not bind her personally, but it must, it would seem, bind her personalty. How else can she be said to possess and enjoy the right, not only of holding, but of disposing of her property "in the same manner and with the like effect as if she were unmarried." To buy the property of another, as already suggested, is one of the modes by which the purchaser, to the extent of the stipulated price, disposes of his own.

Although, however, the wife, as a necessary incident to the exercise of her right, may contract a qualified obligation, does it necessarily follow that the husband is in no case bound? Can a husband carry on business in the name of his wife, buying and selling "as her agent," and himself "having charge of the store," and participating directly or indirectly, as we are bound to presume, in all the gains, without incurring any liability? The old equity rule certainly did not go that length. And the new statute, as we all know, and as its title imports, was enacted not to diminish the liabilities of married *men*, but "for the more effectual protection of the property of married *women*," —its leading feature being to secure to married women "the sole and separate enjoyment of their *property*, and to their husbands the sole and separate enjoyment of their *debts*. In the session of 1853, the legislature, it is true, corrected in part this seeming anomaly ; but the correction, in express terms, was confined to debts contracted before marriage."

Where a wife, then, during marriage, contracts a debt with the consent and approbation of her husband, and especially where, as in this case, she contracts it with the direct agency and participation of her husband, the creditor, as it seems to me, has the election of suing both, or one—both, if he wishes to reach the wife's property ; one, the husband alone, if it is desired to bind him personally.

Judgment for plaintiff for $110.86, with interest from 15th April, 1854, and costs of suit.